# EXHIBIT - B

| STATE OF MICHIGAN<br>54B JUDICIAL DISTRICT<br>30TH JUDICIAL CIRCUIT | COMPLAINT<br>FELONY | DISTRICT: 18-0472 FY<br>CIRCUIT:<br>CTN: 96-18900380-01<br>MSP #: |
|---|---|---|
| District Court ORI: MI330065J | Circuit Court ORI: MI330055J | AG ORI: MI820025A |

| THE PEOPLE OF THE STATE OF MICHIGAN<br>v | | | Victim or complainant:<br>STATE OF MICHIGAN |
|---|---|---|---|
| WILLIAM DERKLEY STRAMPEL<br>111 WINDY RUSH LANE<br>DEWITT, MI 48820 | | | Complaining Witness<br>D/F/LT RYAN PENNELL |
| Co-defendant(s) | | | Date: On or about<br>2012 through 2018 |
| City/Twp./Village<br>City of East Lansing | County in Michigan<br>Ingham | Defendant SID | Defendant DOB<br>02/08/1948 |
| Charge(s)<br>See Below | | | Maximum Penalty<br>See Below |

STATE OF MICHIGAN, COUNTY OF INGHAM
The complaining witness says that on the above date and in East Lansing, the defendant, contrary to law,

**COUNT 1: COMMON LAW OFFENSES**
did commit an indictable offense at common law, to wit: Misconduct of a Public Official; contrary to MCL 750.505. [750.505-C]
FELONY: 5 Years and/or $10,000.00

**COUNT 2: CRIMINAL SEXUAL CONDUCT - FOURTH DEGREE (FORCE OR COERCION)**
did engage in sexual contact with another person, to-wit: V-2, using force or coercion to accomplish the sexual contact; contrary to MCL 750.520e(1)(b). [750.520E1A]
**SORA NOTICE**
   This is a Tier I offense under the Sex Offender Registration Act (SORA) if the victim is 18 years or older. It is a Tier II offense if the defendant has a prior conviction for a Tier I offense. MCL 28.722(s). It is a Tier II offense if the victim was between the ages of 13 to 17, inclusive. MCL 28.722(u)(ix). It is a Tier III offense if the victim was under 13 and the defendant was 17 or older. MCL 28.722(w)(vi). It is a Tier III offense if If the defendant has a prior conviction for a Tier II offense. MCL 28.722(v).
**HIV/STD TESTING NOTICE**
   Take notice that pursuant to MCL 333.5129, upon bindover to circuit court or recorder's court, the district court judge shall order the defendant to be tested for sexually transmitted infection, hepatitis B infection, and for the presence of HIV or an antibody to HIV if the judge determines there is reason to believe the violation involved sexual penetration or exposure to a body fluid of the defendant. If the district judge determines that testing is not required, upon conviction, the court must order the defendant to be tested.
HIGH COURT MISDEMEANOR: 2 Years and/or $500.00; Mandatory HIV/STD testing; DNA to be taken upon arrest.

**COUNT 3: PUBLIC OFFICER - WILFUL NEGLECT OF DUTY**
did, willfully neglect to develop and maintain the Michigan State University College of Osteopathic Medicine, a duty enjoined upon him by MCL 390.661; contrary to MCL 750.478, by allowing Larry Nassar, D.O., whom the defendant had supervisory duties over, to continue to see patients after receiving a Title IX complaint alleging sexual misconduct by Nassar and before the Title IX investigation was completed. [750.478]
MISDEMEANOR: 1 Year and/or $1,000.00

**COUNT 4: PUBLIC OFFICER - WILFUL NEGLECT OF DUTY**
did, willfully neglect to develop and maintain the Michigan State University College of Osteopathic Medicine, a duty enjoined upon him by MCL 390.661; contrary to MCL 750.478, by failing to enforce protocols upon Larry Nassar, including but not limited to, the use of surgical gloves during examinations and procedures involving

patients, acquiring informed consent from patients prior to any examinations or procedures, and attendance by another employee in the examination room with Nassar and patients during examinations and procedures.
[750.478]
MISDEMEANOR: 1 Year and/or $1,000.00

Upon conviction of a felony or an attempted felony court shall order law enforcement to collect DNA identification profiling samples.

The complaining witness asks that defendant be apprehended and dealt with according to law.

| | |
|---|---|
| Warrant authorized on ___03/27/2018___ <br> by: <br><br> *[signature: Will A. Forsyth]* <br><br><br> William Forsyth (P23770) <br> Special Assistant Attorney General <br> Michigan Department of Attorney General <br> 525 W. Ottawa Street <br> P.O. Box 30212 <br> Lansing, MI 48909 <br> 517-373-1110 <br> ☐ Security for costs posted | *[signature]* <br> Complaining witness signature <br><br> Subscribed and sworn to before me on ___MAR 2 7 2018___ <br> Date <br><br> *[signature]*   P-26513 <br> Judge/Magistrate/Clerk     Bar no. |

| State of Michigan<br>54B Judicial District<br>30TH Judicial Circuit | AFFIDAVIT<br>IN SUPPORT OF COMPLAINT | Case No: 18-0472 FY<br>District:<br>Circuit: |
|---|---|---|

**THE COMPLAINING WITNESS, ON INFORMATION AND BELIEF, SAYS:**

1. I, Affiant, RYAN PENNELL, am a Detective First Lieutenant with the Michigan State Police (MSP). I have over 17 years' experience in law enforcement and criminal investigations. My job duties include the investigation of criminal activity as assigned by MSP.

2. In the regular course of my duties I, along with several Michigan Department of Attorney General (AG) investigators and MSP detective sergeants, am involved with the AG's investigation into the circumstances surrounding the sexual assaults committed by Larry Nassar on the Michigan State University (MSU) campus (MSU Investigation).

3. On January 19, 2018, the MSU Board of Trustees (Board) asked the AG to investigate the circumstances surrounding the criminal conduct of Nassar. Nassar pled guilty to several counts of criminal sexual conduct in the first degree in this County and in Eaton County for conduct occurring over the course of several years at MSU, much of which occurred on MSU's campus from the mid-1990s until 2016.

4. William Strampel is the former Dean of the MSU College of Osteopathic Medicine (the College). He held that position from 2002 to 2018.

5. The office of Dean of the College is created by statute. MCL 390.661. That provision establishes a state school of osteopathic medicine and provides that "[t]he school must be headed by an osteopathic physician serving as the dean of the school of osteopathic medicine." MCL 390.661. It further states that "[t]he dean shall be responsible for the *development and maintenance* of the school in osteopathic medicine." *Id.* (emphasis added).

6. As Dean, Strampel occupied a statutorily created public office, exercising the sovereign power of the State to maintain the College and to educate the citizenry. See MCL 390.661.

[STATE OF MICHIGAN DISTRICT COURT stamp: 2018 MAR 27 A 8:05 RECEIVED]

## MISCONDUCT IN OFFICE & CRIMINAL SEXUAL CONDUCT, FOURTH-DEGREE

7. Victim 1 (V-1), a medical student at the College, met with Dean Strampel on June 29, 2017, to discuss appealing a test score she received on an exam that is necessary to complete medical school.

8. During this meeting, Strampel told V-1 that she would not perform well enough to continue in medical school and denied her appeal. Strampel then spoke about his working with 20-to-30-year-olds and said that some of his friends had sexual relations with young women that age. According to V-1, who was 26 years old at the time, Strampel then suggested that 26-year-old women can "put-out" for 20 minutes with an old man, after which he would fall asleep, and in return the women could get the benefit of a free vacation. V-1 felt intimidated, not only by the sexual nature of the conversation, but by the fact that Strampel had begun referring specifically to 26-year-olds, women her very age.

9. During that meeting, Strampel also commented without prompting on the difficulty of sending nude photos. He told V-1 that if he ever caught her taking nude photographs, she would be in trouble. V-1 interpreted these statements as a request to send him nude photographs in exchange for special consideration with respect to her education at the College.

10. Victim 2 (V-2), another student at the College, began her studies in 2011. That year, she was summoned by Strampel to meet with him after falling asleep during a class. V-2 went to his office. Strampel directed her to a chair but told her not to sit. He instructed her to turn around in a circle twice so that he could observe her body.

11. According to V-2, Strampel then went on a rant, degrading her appearance and telling her she needed to dress like a woman, clarifying that she was never going to make it in the profession if she did not dress sexier. According to V-2 this type of harassing ridicule continued for about an hour. The purported reason for the meeting never came up.

12. The following year, V-2 wanted to discuss an exam and was again summoned to Strampel's office. V-2 declined a one-on-one meeting based on her last experience, opting instead to attend a group counseling session hosted by Strampel. During that meeting, Strampel told the group, "I hold your entire future in my hand and I can do whatever I want to with it."

13. In 2013, her third year of medical school, V-2 again met with Strampel, this time to address complaints she had about her surgical residency at a local hospital. Once again, as soon as she entered his office, he directed her to slowly turn around twice so he could look at her body. Strampel advised her that she needed to learn her place in life and asked her, "what do I have to do to teach you to be submissive and subordinate to men?"

14. Strampel threatened her not to say a word about her residency complaints and that if she did, she would be left with a lot of burdensome debt and no medical degree. He reminded V-2 that he had a number of connections not only at MSU but around the country, and that he could run her out of the College and bar her from working in the medical field.

15. In 2014, her fourth year of medical school, V-2 received a scholarship and attended a special dinner to honor the recipients. The event was held at the University Club on MSU's golf course, and Strampel attended as part of his duties as Dean. During the event, she was called up to get her picture taken with the donor of the scholarship fund and Strampel. As she stood next to Strampel waiting for the picture to be taken, Strampel reached around and grabbed V-2's left buttock and gripped it firmly.

16. A few months later, Strampel approached V-2 at a luncheon and slowly looked her up and down from her face to her crotch, finally focusing on her chest. V-2 felt uncomfortable and asked him to instead look at her face. He responded, "eye candy is eye candy."

17. Victim 3 (V-3), a medical student at the College, met with Strampel in 2014 to discuss an exam. When she walked into his office, Strampel scanned her body up and down several times, making her feel uncomfortable. V-3 asked Strampel for permission to retake the exam. Strampel responded that he does not make exceptions for anyone but would do so in her case if she signed a contract agreeing she would leave the College if she failed anything going forward.

18. V-3 retook the exam and, when she fell one point short of a passing grade, was required to meet with Strampel again. He reminded V-3 about their contract and asked what her "Plan B" was since she could not cut it in medical school. He suggested that she become a centerfold model, telling her about another female medical student who became a stripper to pay for medical school.

19. On the subject of her test performance, Strampel agreed to do what he called a "favor" and let her take the exam a third time. In return, Strampel said, V-3 would be required to do anything for him. If he called on the weekend and told her to come to his house, she would have to do it. If he asked her to come "weed the garden," she would have to do it. Given the context, V-3 understood that she was being asked to do anything he wanted sexually in exchange for the favor.

20. Victim 4 (V-4) endured similar experiences as Victims 1-3 and "was not surprised Nassar had been able to victimize so many women under the supervision of Strampel." Early in her medical school career in either 2006 or 2007, V-4 had a conversation with Strampel while working at a local flu clinic. Strampel turned the conversation to the subject of drinking and how "it was good when women were drunk, because then it was easy to have sex with them."

21. In February 2010, V-4 attended the College's annual Ball at the Henry Hotel in Dearborn, Michigan. During the event, V-4 was standing near the dance floor when

Strampel approached her from behind and grabbed her right buttock. V-4 was taken by surprise and turned to look who it was. When she saw that it was Strampel, she was "in complete shock, like a deer in the headlights, and did not know what to say." She did not know what to do since Strampel was the Dean of her medical school and "had complete control of her medical career." She told her boyfriend about the incident but decided not to report it because she "did not want to be thrown out of medical school."

22. On February 2, 2018, pursuant to a search warrant, special agent investigators from the Department of Attorney General retrieved a computer from Strampel's office located in Fee Hall on MSU's campus. On February 15, 2018, special agents submitted the computer to the AG's Criminal Division for expert forensic examination.

23. That forensic examination uncovered approximately 50 photos of bare vaginas, nude and semi-nude women, sex toys, and pornography. Many of these photos are of what appear to be "selfies" of female MSU students, as evidenced by the MSU clothing and piercings featured in multiple photos. Forensic examination shows that someone attempted to delete some of the photos contained in a file folder on the computer's hard drive.

24. Also uncovered on Strampel's work computer were pornographic videos and a video of Dr. Larry Nassar performing "treatment" on a young female patient.

25. One of these pornographic videos was accessed using the Microsoft Outlook email program. The video, which appears to have been created on an Apple iPhone 5 on October 31, 2013, depicts a female masturbating at a very close perspective.

26. Strampel's receipt and possession of this graphic material was in violation of the Acceptable Use Policy for MSU Information Technology Resources, which prohibits users from "utiliz[ing] MSU IT resources to store, display, or disseminate pornographic or other sexually explicit content." See MSU Acceptable Use Policy § 3.10.1.

27. As described above in Paragraph 9, Strampel has solicited nude photos from at least one female medical student.

28. As Dean of the College, Strampel used his office to harass, discriminate, demean, sexually proposition, and sexually assault female students in violation of his statutory duty as a public officer. See MCL 390.661; Const 1963, art VIII, § 1.

29. As Dean of the College, Strampel abused the authority of his public office, through threats and manipulation, to solicit, receive, and possess pornographic images of women who appear to be MSU students in violation of his statutory duty as a public officer. See MCL 390.661; Const 1963, art VIII, § 1.

## NEGLECT OF DUTY

30. Strampel has direct supervisory authority over the MSU Sports Medicine Clinic, a component of the College of Osteopathic Medicine. Dr. Larry Nassar was a faculty member of the College and clinician in the MSU Sports Medicine Clinic.

31. In April 2014, a female patient made a report that Dr. Larry Nassar engaged in inappropriate sexual conduct during a treatment session at his MSU Office. The MSU Office of Inclusion and Intercultural Initiatives (OIE) opened a Title IX investigation into the complaint.

32. As Dean, Strampel prohibited Nassar from seeing patients during the pendency of the Title IX investigation.

33. However, on June 30, 2014, nearly one month before the OIE concluded its investigation and sent its final report to Nassar and the complainant, Nassar emailed Strampel stating his intention that "unless I am told otherwise I believe I am allowed to start back in the clinic tomorrow." Strampel authorized Nassar to begin seeing patients, responding, "if you do have a patient scheduled, please be sure you have someone in the room with you at all times until the report is finished."

34. On July 28, 2014, OIE emailed a final Title IX report to Strampel, Nassar, and the complainant. In the version sent to Strampel and Nassar, the report concluded that:

    - "[T]he failure to adequately explain procedures such as these invasive, sensitive procedures, is opening the practice up to liability and is exposing patients to unnecessary trauma based on the possibility of perceived inappropriate sexual misconduct";
    - "[T]he failure to obtain consent from patients prior to the procedure is likewise exposing the practice to liability";
    - "If procedures can be performed skin-on-skin or over clothes in the breast or pelvic floor area, it would seem patients should have the choice between the two"; and
    - "[T]he practice should consider whether its procedure for intake of complaints about physicians' behavior is adequate," as the victim reported that "she tried to file a complaint with the front desk receptionist, telling her that she was cancelling her appointment because she felt "violated."

35. Following the Title IX report, Strampel purported to implement treatment protocols for Dr. Larry Nassar designed to protect patients and to prevent future allegations against the College. He did so in the exercise of his statutory duty to "develop[] and maintain[]" the College.

36. On July 30, 2014, Strampel emailed Nassar confirming the protocols he was to take when treating patients in the future, writing:

   Thanks and as per our conversation yesterday I am glad we have agreed to the following:

   1) We will have another person, (resident, nurse, etc) in the room whenever we are approaching a patient to preform [sic] procedures of anything close to a sensitive area.

   2) The procedure which caused the patient emotional distress because of her interpretation will be modified in the future to be sure that there is little to no skin to skin contact when in these regions. Should this be absolutely necessary, the procedure will be explained in detail with another person in the room for both the explanation and procedure.

   3) New people in our practice will be oriented to be sure they understand these requirements.

37. Pursuant to his statutory oversight duties as Dean, on July 30, 2014, Strampel forwarded his email to Kristine Moore of the Title IX Office, indicating that the College would enforce such protocols on Nassar.

38. Despite his representation of his (and the College's) intended response to the allegations against Nassar, Strampel did not actually enforce or monitor these protocols, nor did he alert other employees in the Sports Medicine Clinic about the existence of the protocols, let alone order that they be followed with respect to Nassar.

39. Missing from the protocols he purported to implement were any changes relating to how the College's clinic handles complaints of inappropriate treatment. Strampel did not direct any changes to the clinic's policy regarding the handling of patient complaints.

40. After the Title IX investigation and his meeting with Strampel, Nassar continued "treating" numerous patients unchecked by the protocols supposedly put in place by Strampel to protect Nassar's patients. As a result, Nassar was able to commit a host of sexual assaults against new victims until, following news reports of additional allegations against Nassar, MSU finally terminated his employment over two years later.

Reviewed on: 3-26-18

_William A. Forsyth_

William A. Forsyth, P23770
Special Counsel
525 W. Ottawa St.
Lansing, MI 48909

_Ryan Pennell_
D/F/LT. RYAN PENNELL (Affiant)
Michigan State Police

Subscribed and Sworn before me on: MAR 2 7 2018
Date

Honorable _[signature]_ P-26517
Judge/Magistrate – 54B District Court

| STATE OF MICHIGAN<br>54B JUDICIAL DISTRICT<br>30L JUDICIAL CIRCUIT | WARRANT<br>FELONY | DISTRICT:<br>CIRCUIT:<br>CTN: 96-18900380-01<br>MSP #: |
|---|---|---|
| District Court ORI: MI330065J | Circuit Court ORI: MI330055J | AG ORI: MI820025A |

THE PEOPLE OF THE STATE OF MICHIGAN

v

WILLIAM DERKLEY STRAMPEL
111 WINDY RUSH LANE
DEWITT, MI 48820

Victim or complainant:
STATE OF MICHIGAN

Complaining Witness:
D/F/LT RYAN PENNELL

| Height: | Weight: | Hair Color: | Eye Color: | Race: White | Sex: M | Date: On or about 2012 through 2018 |
|---|---|---|---|---|---|---|
| City/Twp./Village<br>City of East Lansing | County in Michigan<br>INGHAM | | Defendant SID | | | Defendant DOB<br>02/08/1948 |
| Charge(s)<br>See Below | | | | | | Maximum Penalty<br>See Below |

STATE OF MICHIGAN, COUNTY OF INGHAM
To any peace officer or court officer authorized to make arrest: The complaining witness has filed a sworn complaint in this court stating:

**COUNT 1: COMMON LAW OFFENSES**
did commit an indictable offense at common law, to wit: Misconduct of a Public Official; contrary to MCL 750.505. [750.505-C]
FELONY: 5 Years and/or $10,000.00

**COUNT 2: CRIMINAL SEXUAL CONDUCT - FOURTH DEGREE (FORCE OR COERCION)**
did engage in sexual contact with another person, to-wit: V-2, using force or coercion to accomplish the sexual contact; contrary to MCL 750.520e(1)(b). [750.520E1A]
**SORA NOTICE**
This is a Tier I offense under the Sex Offender Registration Act (SORA) if the victim is 18 years or older. It is a Tier II offense if the defendant has a prior conviction for a Tier I offense. MCL 28.722(s). It is a Tier II offense if the victim was between the ages of 13 to 17, inclusive. MCL 28.722(u)(ix). It is a Tier III offense if the victim was under 13 and the defendant was 17 or older. MCL 28.722(w)(vi). It is a Tier III offense if if the defendant has a prior conviction for a Tier II offense. MCL 28.722(v).
**HIV/STD TESTING NOTICE**
Take notice that pursuant to MCL 333.5129, upon bindover to circuit court or recorder's court, the district court judge shall order the defendant to be tested for sexually transmitted infection, hepatitis B infection, and for the presence of HIV or an antibody to HIV if the judge determines there is reason to believe the violation involved sexual penetration or exposure to a body fluid of the defendant. If the district judge determines that testing is not required, upon conviction, the court must order the defendant to be tested.
HIGH COURT MISDEMEANOR: 2 Years and/or $500.00; Mandatory HIV/STD testing; DNA to be taken upon arrest.

**COUNT 3: PUBLIC OFFICER – WILFUL NEGLECT OF DUTY**
did, willfully neglect to develop and maintain the Michigan State University College of Osteopathic Medicine, a duty enjoined upon him by MCL 390.661; contrary to MCL 750.478, by allowing Larry Nassar, D.O., whom the defendant had supervisory duties over, to continue to see patients after receiving a Title IX complaint alleging sexual misconduct by Nassar and before the Title IX investigation was completed. [750.478]
MISDEMEANOR: 1 Year and/or $1,000.00

COUNT 4: PUBLIC OFFICER - WILFUL NEGLECT OF DUTY
did, willfully neglect to develop and maintain the Michigan State University College of Osteopathic Medicine, a duty enjoined upon him by MCL 390.661; contrary to MCL 750.478, by failing to enforce protocols upon Larry Nassar, including but not limited to, the use of surgical gloves during examinations and procedures involving patients, acquiring informed consent from patients prior to any examinations or procedures, and attendance by another employee in the examination room with Nassar and patients during examinations and procedures.
[750.478]
MISDEMEANOR: 1 Year and/or $1,000.00

Upon conviction of a felony or an attempted felony court shall order law enforcement to collect DNA identification profiling samples.

Upon examination of the complaining witness, I find that the offense(s) charged has/have been committed and that there is probable cause to believe that defendant committed the offense(s). THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I order you to arrest and bring defendant before the 54B District Court immediately.

The defendant may be released before arraignment if $_____ is posted as interim bail

by_____
  Date

_____MAR 2 7 2018_____     (SEAL)   _____ P-26512_____
Date                                          Judge/Magistrate           Bar no.